**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Raymond P. Moore**

Civil Action No. 15-cv-01945-RM

ANTONIO AGUILAR,

      Applicant,

v.

DAVID ZUPAN, and
COLORADO STATE ATTORNEY GENERAL,

      Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

      This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) (the "Application"), filed *pro se* by Applicant Antonio Aguilar, on September 8, 2015.  He has been granted leave to proceed *in forma pauperis*. (ECF No. 5).  Respondents submitted a Pre-Answer (ECF No. 12) and an Answer (ECF No. 18).  Applicant failed to file a Reply despite being given an opportunity to do so.  After reviewing the record, including the Application, the Pre-Answer, the Answer, and the state court record, the Court finds and concludes that the Application should be denied and the case dismissed with prejudice.

### I.  BACKGROUND

      On February 1, 2005, Applicant was convicted by a jury of first degree burglary, second degree burglary, theft, robbery and conspiracy to commit robbery in Jefferson County District Court Case No. 03CR2633. (ECF No. 1 & 12-7).  The jury could not

reach a verdict on a charge of felony murder and a mistrial was granted with respect to that charge.  (ECF No. 12-7).  Prior to the scheduled retrial, defendant pled guilty to second degree murder in exchange for dismissal of the felony murder charge.  *Id.*  On April 15, 2005, the trial court sentenced defendant to a total of fifty-seven years in prison.  (*Id*.)

On direct appeal, Applicant challenged his lesser convictions and related sentence.  On August 21, 2008, the Colorado Court of Appeals merged applicant's first and second degree burglary convictions and affirmed the judgment in all other respects.  (ECF No. 12-3).  The Colorado Supreme Court denied certiorari on December 22, 2008.  (ECF No. 12-5).

On January 8, 2010, applicant filed a *pro se* Crim. P. 35(c) motion alleging nine claims of ineffective assistance of counsel.  (ECF No. 12 at 2 n.1).  The district court issued a written order denying the claims without holding a hearing.  The Colorado Court of Appeals affirmed the postconviction court's order.  (ECF No. 12-7).  The Colorado Supreme Court denied certiorari on December 9, 2013.  (ECF No. 12-9).

On December 16, 2013, applicant filed a motion to correct illegal sentence with the state district court. (ECF No. 12-1).  He resubmitted the motion, with counsel, on February 3, 2014.  (*Id.*)  The motion was denied by the district court in a written order on February 7, 2014.  (*Id.*)  The Court of Appeals affirmed the denial, (ECF No. 12-12), and the Colorado Supreme Court denied certiorari on June 1, 2015, (ECF No. 12-14).

On July 8, 2015, applicant filed a "Petition for Post Conviction Relief" and "Direct Appeal 35c" with the state district court.  (ECF No. 12-1 at 10).  The motions were

denied and the appeal is currently pending.  (*See* ECF No. 12-1 at 9-10, ECF No. 12-15, ECF No. 12-16).

On April 1, 2013, Applicant initiated a habeas action pursuant to 28 U.S.C. § 2254 in this court. *See Aguilar v. Tamme*, 13-cv-00494-MSK.  In that case, Chief Justice Marcia S. Krieger initially dismissed the application in part. (*Id.* at ECF No. 25). Subsequently, the entire case was deemed voluntarily dismissed. (*Id.* at ECF No. 35).

On September 8, 2015, Applicant filed the instant habeas motion pursuant to 28 U.S.C. § 2254, asserting the following nine claims for relief:

1. Double Jeopardy (jurisdiction) violation because the trial court allowed the felony murder charge to be retried following Mr. Aguilar's burglary conviction at the first trial.

2. Due Process Violation because the prosecution's testing of DNA evidence consumed the sample.

3. Due Process Violation because the trial court allowed an expert witness to testify about population frequency statistics.

4. Due Process Violation because the evidence was insufficient to support the convictions for robbery and theft.

5. Due Process Violation because the state was required to prove that applicant had the intent to commit theft, which was an essential element of the crime of burglary.

6. Due Process Violation because the prosecution was allowed to amend the burglary charge after the close of evidence.

7. Due Process Violation because of prosecutorial misconduct during closing argument.

8. Due Process Violation because the trial court failed to instruct the jury on the lesser included offense of criminal negligent homicide and/or manslaughter.

9. Due Process Violation because there was no factual basis for the court to accept applicant's guilty plea to second degree murder.

3

(ECF No. 1 at 5-6.)

In the Pre-Answer Response, Respondents conceded that the Application was timely under 28 U.S.C. § 2244(d). (ECF No. 12 at 6). On November 20, 2015, the Court dismissed claims one, two, three and eight of the Application as procedurally barred. (ECF No. 15). Accordingly, the Court addresses the merits of claims four, five, six, seven, and nine of the Application below.

## II. LEGAL STANDARDS

### A. *PRO SE* LITIGANT

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). An applicant's *pro se* status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**B. 28 U.S.C. § 2254**

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme Court

at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390

(2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases
> where the facts are at least closely-related or similar to the case *sub
> judice*.  Although the legal rule at issue need not have had its genesis in
> the closely-related or similar factual context, the Supreme Court must
> have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id*. at

1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if:
> (a) "the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases"; or (b) "the state court confronts a set of
> facts that are materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).  "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule
> from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at
> 407-08.  Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably extends, or
> unreasonably refuses to extend, a legal principle from Supreme Court
> precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable."  *Id*. at 411. "[A] decision

is 'objectively unreasonable' when most reasonable jurists exercising their independent

6

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).  In conducting this analysis,

the court "must determine what arguments or theories supported or . . . could have

supported[ ] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of [the Supreme] Court." *Id*.  Moreover, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts

in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court

must presume that the state court's factual determinations are correct and the petitioner

bears the burden of rebutting the presumption by clear and convincing evidence.  "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–*

*El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was

contrary to, or involved an unreasonable application of, clearly established federal law."

*Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).  "Unless the error is a structural

defect in the trial that defies harmless-error analysis, [the Court] must apply the

harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ."  *Id.*; *see*

*also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must

conduct harmless error analysis under *Brecht*  anytime it finds constitutional error in a

state court proceeding regardless of whether the state court found error or conducted

harmless error review).  Under *Brecht*, a constitutional error does not warrant habeas

relief unless the Court concludes it "had substantial and injurious effect" on the jury's

verdict.  *Brecht*, 507 U.S. at 637.  "A 'substantial and injurious effect' exists when the

court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."

*Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).  "Grave

doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual

equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.  The Court

make this harmless error determination based upon a review of the entire state court

record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

### III.  ANALYSIS

### A.  CLAIM FOUR

In Claim Four, Applicant asserts that he was denied due process because the

evidence was insufficient to support his robbery and theft convictions.  (*See* ECF No. 1

at 20).  Mr. Aguilar challenges the element of "taking from the *presence* of the victim"

with respect to the robbery conviction and "*taking* items from the victim," with respect to

both the robbery and theft convictions.

A habeas applicant's constitutional challenge to the sufficiency of the evidence is

governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support

a conviction as a matter of due process if, "after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  *Id.*  at 319 (emphasis in the

original).  The court considers both direct and circumstantial evidence in determining the

sufficiency of the evidence.  *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).

The court "may not weigh conflicting evidence nor consider the credibility of witnesses,"

but must "'accept the jury's resolution of the evidence as long as it is within the bounds

of reason.'"  *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v.

Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).  "Sufficiency of the evidence is a

mixed question of law and fact."  *Maynard*, 468 F.3d at 673.  The Court must apply both

§ 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*

In applying *Jackson*, the court looks to state law to determine the substantive elements of the offense. *See Jackson*, 443 U.S. at 324 n.16; *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004). To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

### 1. "Presence of the victim" element

First, Applicant argues that the prosecution did not present sufficient evidence that he took from the "presence" of the victim to support his robbery conviction. (*See* ECF No. 1 at 20). Under Colorado law, the crime of robbery is defined as: knowingly taking "anything of value from the person or presence of another by the use of force, threats, or intimidation." Colo. Rev. Stat. ("C.R.S.") § 18-4-301(1) (2007). Mr. Aguilar maintains that the victim was not in the "presence of the articles that were taken and was not close enough to them to have prevented the taking, even if his movement was curtailed." (*See* ECF No. 1 at 20).

The Colorado Court of Appeals rejected Applicant's claim regarding "presence of the victim" on the following grounds:

> Property is taken from the presence of another when "it is so within the victim's reach, inspection or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim." *People v. Bartowsheski*, 661 P.2d 235, 244 (Colo. 1983). When the victim of the robbery, against who force, threats, or intimidation is directed, is present in one room of a residence and the taking occurs in another room, the "presence" requirement is satisfied. *Id.*

> Here, although the property items were taken from the upper floor while the victim was on the lower floor, we conclude that he would have been able to retain control over the property but for the force used by defendant against him.
>
> Defendant's reliance on *People v. Benton*, 829 P.2d 451 (Colo. App. 1991), is misplaced.  The division there held that a restaurant customer was not a victim of aggravated robbery, because he did not have any right of control and did not exercise any control over the money that was stolen from the restaurant's cash registers.  *Id.* at 453-54.  Here, it is undisputed that the victim had the right of control over the property taken from his home.

(ECF No. 11-3 at 3-4).

In habeas review, a federal court must defer to Colorado courts' interpretation of the "presence" requirement in Colorado law.  The Colorado Supreme Court has explained the presence requirement as follows:

> It has been stated that "presence" in the context of robbery "is not so much a matter of eyesight as it is one of proximity and control: the property taken in the robbery must be close enough to the victim and sufficiently under [her] control that, had the latter not been subjected to violence or intimidation by the robber, [she] could have prevented the taking." W. LaFave and A. Scott, *Handbook on Criminal Law* § 94 at 696 (1972).  The word "presence" has been construed to encompass the taking of property from a location different from but near the place where the force, threats, or intimidation was initially employed against the robbery victim. *See e.g., Cobern v. State*, 273 Ala. 547, 142 So.2d 869 (1962) (robbery committed where victim attacked and killed in her home and car stolen from her front yard); *State v. Atkins*, 549 S.W.2d 927 (Mo. App. 1977) (property taken from closet in another room within a victim's presence or control).  We hold that property is taken from the "presence of another" when it is so within the victim's reach, inspection or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim.  *See United States v. Dixon*, 152 U.S. App. D.C. 200, 469 F.2d 940 (D.C.

> Cir. 1972); *People v. Braverman*, 340 Ill. 525, 173 N.E. 55
> (1930); *Commonwealth v. Homer*, 235 Mass. 526, 127 N.E.
> 517 (1920).  Any narrower construction would "invite would-
> be perpetrators to waylay their victims in one location and
> then as part of the same transaction, to take their property
> from another nearby location, thereby avoiding guilt of
> robbery, even if the other elements of the offense were
> present." *State v. Thompson*, 37 N.C.App. 651, 661, 247
> S.E.2d 235, 240-41 (1978).  In this case, the "presence"
> element is broad enough to encompass the situation where
> the victim of the robbery, against whom the force, threats, or
> intimidation is directed, is present in one room of a family
> home and the taking occurs within another room.

*People v. Bartowsheski*, 661 P.2d 235, 244 (Colo. 1983).

Here, the evidence supports the following facts:  the victim was tied up in the

basement and his property was taken from the main floor. (*See* ECF No. 11-3 at 3).

The state court's factual findings, which are presumed correct in this federal habeas

proceeding, are supported by the state court record,[1] and are unrebutted by Applicant.

Viewed in a light most favorable to the prosecution, a rational jury could have concluded

beyond a reasonable doubt that Applicant took "from the presence" of the victim.  The

Court therefore finds that the state appellate court's determination that there was

sufficient evidence presented at Applicant's trial to support his conviction for robbery

was consistent with federal law.

### 2.  "Taking" element

Next, Applicant argues that the prosecution did not present sufficient evidence

that he "*[took]* items from the victim," with respect to both the robbery and theft

convictions.  (*See* ECF No. 1 at 20).  He maintains that "[w]itnesses testify that they

---

[1] *See* State Court R., 1/24/05 Trial Tr.

never seen [sic] me taking anything from the house or from Mr. Roberts physically."

*See id.*

The Colorado Court of Appeals analyzed the taking element of robbery and theft

as follows:

> The prosecution asserted both that defendant was directly culpable of robbery and theft, and that he was guilty based on a theory of complicity. To be guilty of a criminal offense under a theory of complicity, a person must (1) have knowledge that another person intends to commit an offense; (2) have the intent to promote or facilitate the commission of the offense; and (3) aid, abet, advise, or encourage another in planning or committing the offense. § 18-1-603, C.R.S. 2007; *People v. Fisher*, 904 P.2d 1326, 1330 (Colo. App. 1994), *vacated and remanded to* 926 P.2d 170 (Colo. App. 1996).
>
> Viewed in the light most favorable to the prosecution, the evidence at trial established that defendant and his friends planned to rob the victim, and in furtherance of that plan, went to the victim's home three times on the night of the robbery. On their second visit, defendant removed glass from a door so that he and his friends could enter the home. Defendant knew that the women planned to rob the victim while he and his male roommate tied up and restrained the victim.
>
> Accordingly, we conclude that sufficient evidence was presented to enable a reasonable jury to find defendant guilty beyond a reasonable doubt of theft and robbery based on a complicity theory.

(ECF No. 12-3 at 5-6).

At the time applicant committed his offense, the Colorado Supreme Court

interpreted the complicity statute, C.R.S. § 18-1-603, to require the following elements:

1. A crime must have been committed.
2. Another person must have committed [all or part of] the crime.
3. The defendant must have had knowledge that the other person intended to commit [all or part of] the crime.

4. The defendant must have had the intent to promote or facilitate the commission of the crime.
5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

*People v. Bogdanov*, 941 P.2d 247, 254 n.10 (Colo. 1997).[2]

Here, the evidence supports the following facts:  the defendant and his three companions devised a plan to rob the victim.  While carrying out the plan, Mr. Aguilar and the other male restrained the victim in the basement while the two females stole items from the main floor. (*See* ECF No. 11-3 at 5-6).  The state court's factual findings, which are presumed correct in this federal habeas proceeding, are supported by the state court record,[3] and are unrebutted by Applicant.  The Court therefore finds that the state appellate court's determination that there was sufficient evidence presented at Applicant's trial to support his conviction for robbery and theft was consistent with federal law.

Thus, Applicant cannot prevail on Claim Four.

## B.  CLAIMS FIVE AND SIX

In Claim Five, Applicant asserts that his due process rights were violated because in order to be convicted of burglary, the state was required to prove that applicant had an intent to commit theft, which was an essential element of the crime of burglary.  In Claim Six, Applicant asserts that his due process rights were violated because the prosecution was allowed to amend the burglary charge after the close of evidence to tender an instruction of theft instead of robbery as the underlying offense.

---

[2] The Respondents acknowledge that the Colorado Supreme Court recently retreated from this definition of complicity in *People v. Childress*, No. 12SC820, 2015 CO 65 (Colo. Nov. 23, 2015).

[3] *See* State Court R., 1/24/05 Trial Tr.

(*See* ECF No. 1 at 20-21). The Respondents argue that Claim Five presents only an abstract statement of law that appears to be related to Claim Six.

Both claims are based on the Prosecution changing the underlying offense for the burglary charge from robbery to theft. It was clearly established federal law when Applicant was convicted "that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). As a result, "[a] charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him." *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999). In determining whether Applicant had adequate notice of the nature and cause of the accusations filed against him prior to trial, the Court may consider the charges as stated in the amended information as well as the evidence presented at Applicant's preliminary hearing and through discovery. *See Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002) (analyzing adequacy of a charging document by considering the information and other material available at the preliminary hearing and through discovery).

The Court of Appeals analyzed the issue as follows:

> A constructive amendment is made when an essential element of the charged offense is changed. *People v. Foster*, 971 P.2d 1082, 1087 (Colo. App. 1998) (citing *People V. Rodriguez*, 914 P.2d 230 (Colo. 1996)). "A variance that broadens an indictment constitutes a constructive amendment and is reversible per se." *Id.* (citing *United States v. Wright*, 932 F.2d 868 (10th Cir. 1991)). "'Technical defects in an information do not require reversal unless the substantial rights of the defendant are prejudiced. The defendant is entitled to reversal if he was prejudiced, surprised, or hampered in his defense.'" *Rodriguez*, 914

15

P.2d at 259 (quoting *People v. Albo*, 195 Colo. 102, 106, 575 P.2d 427, 429 (1978)); *see* § 16-10-202, C.R.S. 2007 (no judgment of conviction shall be reversed due to any defect which does not prejudice substantial rights of the defendant on the merits).

First degree burglary is committed when a person "knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime." § 18-4-202(1), C.R.S. 2007.  The statute does not specify the types of crimes that satisfy the intent element.

A criminal information charging burglary is not defective simply because it does not specify the underlying intended crime.  *See People v. Williams*, 984 P.2d 56, 60 (Colo. 1999) (construing similar language in criminal trespass statute). Failure to correctly specify the underlying intended crime in the criminal information here was a defect of form, not of substance, and could be corrected at any time before the verdict so long as substantial rights of defendant were not prejudiced.  *Id.* at 63-64; *see* Crim. P. 7(e).

Here, the information charged the defendant with (1) first degree burglary with intent to commit robbery, and (2) second degree burglary with intent to commit theft.  At the end of trial, but before jury deliberations, the prosecution submitted an instruction alleging that defendant committed first degree burglary, but without specifying an underlying intended crime.  The court rejected the instruction, and allowed the prosecution to select between robbery and theft as the underlying intended crime.  The prosecution chose to instruct the jury on first degree burglary with intent to commit theft.  The trial court permitted the amendment, over defense counsel's objection, and stated its belief that such amendment would not be a surprise to the defense.

We conclude that the instruction did not impermissibly amend the charge in the information, because the information alleged the essential elements of burglary with sufficient specificity to inform defendant of the offenses with which he was charged.  *Rodriguez*, 914 P.2d at 258.  The specification of the underlying intended crime "represents further evidentiary details which the information need not state." *Id.*

> Here as in *Rodriguez*, "any variance . . . between the facts
> set forth in the information and those on which the court
> instructed the jury concerned the same incident . . ., the
> same defendant, victim, and accomplices." *Id.* Defendant
> was on notice that theft was charged both as an underlying
> intended crime for the second degree burglary charge, and
> as an independent charge, and he therefore was not
> hampered in presenting his defense. *Id.* at 259. Therefore,
> we agree with the trial court that there was no unfair surprise
> or prejudice to defendant from the prosecution's submission
> of a jury instruction naming theft as the underlying intended
> crime for the first degree burglary charge.
>
> Consequently, we conclude the trial court did not abuse its
> discretion when it permitted the prosecution to amend the
> burglary charge.

(ECF No. 12-3 at 8-11).

The Colorado Court of Appeals concluded that Applicant was made aware of the

charges he faced and that he had an adequate opportunity to defend against those

charges. That conclusion was based in large part on the fact that theft was charged

both as an underlying intended crime for the second degree burglary charge, and as an

independent charge. The state court's decision rejecting Applicant's claim is neither

contrary to nor an unreasonable application of clearly established federal law.

Therefore, his Fifth and Sixth Claims will be dismissed.

### C.  CLAIM SEVEN

In Claim Seven, Applicant asserts a due process violation because of

prosecutorial misconduct during closing argument. Specifically, he contends that his

due process rights were violated when the prosecutor stated during closing arguments

that he had a personal friend that was a criminal defense attorney who told him there

were only five ways to defend a criminal defendant.  The prosecutor then went on to list all of the five ways.

The clearly established federal law relevant to a claim challenging a prosecutor's comments during closing argument is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986).  *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam).  In *Darden*, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In order to determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial."  *Jackson v. Shanks* , 143 F.3d 1313, 1322 (10th Cir. 1998).  "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Colorado Court of Appeals reasoned as follows in rejecting Mr. Aguilar's due process claim premised on the prosecutor's comments during closing argument:

> A defendant has the right to a trial by a fair and impartial jury. U.S. Const. amend. VI; Colo. Const. art. II, §§ 16, 23.  A jury is no longer impartial if it has been misled by inadmissible evidence or improper argument.  *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005); *Harris v. People*, 888 P.2d 259, 264 (Colo. 1995).
>
> A trial court has discretion to determine whether a prosecutor's statements constitute misconduct.  *Domingo-Gomez*, 125 P.3d at 1049 (citing *Harris*, 888 P.2d at 265). When determining the propriety of a prosecutor's

statements, a trial court must consider "the language used, the context in which the statements were made, and the strength of the evidence supporting the conviction." *Id.* at 1050. "Arguments made for the obvious purpose of denigrating defense counsel are improper and constitute professional misconduct." *People v. Williams*, 89 P.3d 492, 494 (Colo. App. 2003) (citing *People v. Darbe*, 62 P.3d 1006, 1013 (Colo. App. 2002)); *see also People v. Hogan*, 114 P.3d 42, 56 (Colo. App. 2004) (it was improper to compare defense counsel's strategy to the defendant's strategy in selecting an alleged kidnapping victim); *but see People v. Cevallos-Acosta*, 140 P.3d 116, 124 (Colo. App. 2005) (trial court did not abuse its discretion in overruling objection to a personal attack where the statements made did not directly denigrate the defense or impugn defense counsel's integrity). However, a prosecutor may comment in rebuttal argument on whether the defendant's theory lacks credibility. *Foster*, 971 P.2d at 1086.

Where a defendant objects at trial to a prosecutor's improper argument, we review for harmless error. *Crider v. People*, 186 P.3d 39, 42-43 (Colo. 2008) (prosecutorial misconduct is subject to review for harmless error, and not for constitutional harmless error); *Liggett v. People*, 135 P.3d 725, 733 (Colo. 2006). Even a properly preserved assertion of trial error will be disregarded as harmless whenever there is no reasonable probability that it contributed to the defendant's conviction. *Crider*, 186 P.3d at 42. Improper argument that does not substantially influence the verdict or adversely affect the fairness of the proceedings is harmless. *People v. Knight*, 167 P.3d 147, 156 (Colo. App. 2006) (citing *People v. Griffith*, 58 P.3d 1111, 1113 (Colo. App. 2002)); *see* Crim. P. 52(a).

## B. Analysis

Here, the prosecutor stated that he had spoken with a good friend of his who was a defense attorney, who had told him that there are only five ways to defend a criminal defendant. The trial court overruled defendant's objection to this comment, and reminded the jury that the prosecutor's comments were argument. The prosecutor then argued that the five possible defense strategies were:

(1)     "the mother defense, the alibi defense.  The mother comes in and says he was with me at the nursing home reading from the Bible";

(2)     "the he deserved it defense, that somehow his life is less worthy than anyone else's because he might have had non-standard sexual preferences";

(3)     "all these imaginary doubts in this trial I will call Sponge Bob Square Pants, that some absolutely mythical creature came in and killed [the victim] on the very same date that [this] group of four went over to jack him . . .";

(4)     "I did it but I was high"; and

(5)     "[t]he last defense is shortened to SODDI, S-O-D-D-I, some other dude did it."

We conclude that defendant's objection to the initial line of argument was sufficient to preserve this issue for appeal, and we therefore review it under a harmless error standard.

The prosecutor's quoted comments were improper, in that they tended generally to denigrate defense counsel and to belittle the common defense strategy of positing reasonable doubts.  However, some of these comments, though inartfully phrased, responded to defense counsel's closing argument, in which she:  asserted that a party other than defendant could have gone to the victim's home after defendant and his companions left; detailed the victim's sexual preferences, drug use, and risky behavior; and argued that the cause of the victim's death was unknown.  In light of the substantial evidence supporting defendant's conviction, we conclude that the prosecutor's remarks, even if improper, did not substantially influence the verdict or contribute to defendant's conviction, and any error was therefore harmless.

(ECF No. 12-3 at 17-20).

The Colorado Court of Appeals determined Mr. Aguilar's claim under a state law standard similar to the standard identified by the United States Supreme Court.

Although the prosecutor's remarks may have been inappropriate, they did not so infect the trial with unfairness as to make the conviction a denial of due process. The majority of the prosecution's comments were in response to the defense counsel's statements during closing argument.[4]  Further, the trial court specifically instructed the jury that the prosecutor's statement was "argument."[5]  As such, the Court finds that the state appellate court's resolution of Applicant's claim was not contrary to or an unreasonable application of the clearly established rule of federal law.  Therefore, Mr. Aguilar is not entitled to relief with respect to Claim Seven.

### D. CLAIM NINE

In Claim Nine, Applicant asserts his due process rights were violated because there was no factual basis for his guilty plea to second degree murder as a crime of violence.  This claim was presented to the Colorado Court of Appeals as an ineffective assistance of counsel claim. (*See* ECF 12-6 at 2).

The Colorado Court of Appeals addressed Applicant's factual basis claim and concluded that it lacked merit based on the following reasoning:

> Defendant contends he received ineffective assistance of counsel during the Crim. P. 11 providency hearing. Specifically, he argues that his counsel failed to explain that . . . the People were required to establish a factual basis for his guilty plea.  Subsumed within these arguments is defendant's claim that his plea was not voluntary, knowing, or intelligent.  Because the record refutes each of these arguments, we reject this contention.
>
> "[For a plea] to be constitutionally valid, a defendant must enter his guilty plea knowingly, voluntarily, and intelligently."

---

[4] *See* State Court R., 1/28/05, Trial Tr., at 38-56.

[5] *See id.* at 58.

*Sanchez-Martinez v. People*, 250 P.3d 1248, 1255 (Colo. 2011).  "'The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)).

. . .

[D]efendant's plea agreement expressly waived his right to establishment of a factual basis, stating, "I agree that there is a factual basis for the plea of guilty to the crime charged in this matter and waive the requirement of showing a factual basis for the plea."  In any event, at the providency hearing the trial court inquired into the factual basis, and the following exchange occurred:

> THE COURT: All right.  Now, I heard two trials on this, so I think I've got a pretty good idea of what the facts are, but your lawyer is going to basically tell me what they think the other side would be able to show.  I understand there's two sides to the story, but I think they think the other side could show that you and [a codefendant] went, you know, to the basement, tied up [the victim] with tape and cords and something else, a belt, I think, covered him with a mattress, tied him so tight he couldn't get loose.  The result is he died.
>
> Is that what you believe the evidence against your client would be?
>
> DEFENSE COUNSEL:  That's correct, Judge.
>
> THE COURT:  Is that true, did you and [codefendant] do that?
>
> DEFENSE COUNSEL:  Judge, if I could, as I indicated [defendant] is not giving up his right on that. I would ask the Court not to ask him that.
>
> THE COURT:  You are not? Ordinarily I ask a person whether they did it because usually I'm not going to let him plead guilty to something that he didn't do.

> But your lawyer, you sat through the trial, I'm not
> going to ask you to admit that's what you said [sic].
> But do you agree that that's what the district
> attorney's evidence will show?
>
> DEFENDANT:  That's what they're trying to prove,
> yeah.
>
> THE COURT:  They – they do have evidence that
> should prove that if a jury believed their side of the
> story.
>
> DEFENDANT:  If the jury would believe.
>
> THE COURT:  Well, that clarifies a factual basis.
>
> . . .
>
> The record . . . refutes defendant's claim that his plea was
> not voluntary, knowing, or intelligent.  At the providency
> hearing, defendant represented to the court that he had read
> the entire plea agreement and understood everything in it.
> After full advisement by the court, defendant pled guilty.  The
> record shows that this was a voluntary and intelligent choice
> among the alternative courses of action open to defendant.
> *Sanchez-Martinez*, 250 P.3d at 1255; *see, e.g., North
> Carolina v. Alford*, 400 U.S. 25, 37-38 (1970) ("Confronted
> with the choice between a trial for first-degree murder, on the
> one hand, and a plea of guilty to second-degree murder, on
> the other, Alford quite reasonably chose the latter and
> thereby limited the maximum penalty to a 30-year term.").

(ECF No. 12-7 at 13-18).

The federal Constitution does not require a factual basis for a guilty plea.

*Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971). Section 2254 does not provide a

remedy for a claim that a guilty plea lacked a factual basis. *Sena v. Romero*, 617 F.2d

579, 581 (10th Cir. 1980) ("[Petitioner's] contention that the absence of a record

showing a factual basis for his plea is an independent ground for invalidating the plea, is

without merit.").  Only when the defendant claims his factual innocence while pleading

guilty have state courts been constitutionally required to establish a factual basis for a plea. *See Alford*, 400 U.S. at 37-39.

I have reviewed the transcript of the March 15, 2005 providency hearing. *See* State Court R., 3/15/05 Hearing Transcript.  Although Applicant maintained his innocence at trial, I find no statement of innocence by Mr. Aguilar in the transcript during the providency hearing.  *See id.*  Mr. Aguilar's attorney stated that Applicant did not want to openly admit to the factual basis, but he also did not openly deny it.  At the hearing, the Court provided an explanation of what the prosecution's evidence could show at trial.  Mr. Aguilar agreed that the prosecution had evidence that could prove second degree murder if the jury believed the prosecution's side of the story. *See id*. at 12.  Further, in response to the trial court judge's questions, Mr. Aguilar responded that he had read and understood the plea agreement, that he had enough time to talk with his attorneys about the plea, and that he thought his attorneys had done a "pretty good" job for him. *See id.* at 3, 7.

Based on my review of the state court record, I find that the Colorado Court of Appeals' decision regarding Mr. Aguilar's factual basis claim is not contrary to or an unreasonable application of established federal law.  Therefore, Applicant's Claim Nine lacks merit.

## IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), filed *pro se* by Applicant Antonio Aguilar, on September 8, 2015, is DENIED and this case is DISMISSED on the merits.  It is

FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because Applicant has not made a substantial showing that jurists of reason would find it debatable whether the jurisdictional and procedural rulings are correct and whether the Application states a valid claim of the denial of a constitutional right.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED this 25th day of February, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge